# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RENEE TERESA GOELLNER-GRANT, KYLE D. GRANT, and ALEXANDER GOELLNER,** | : : : : | **CIVIL ACTION NO. 1:19-CV-244** <br><br> **(Chief Judge Conner)** |
| **Plaintiffs** | : : | |
| **v.** | : : | |
| **JLG INDUSTRIES, INC.,** | : : | |
| **Defendant** | : : | |

## MEMORANDUM

Plaintiffs Renee Teresa Goellner-Grant, Kyle D. Grant, and Alexander Goellner (collectively "Goellner-Grant family") commenced this action under Missouri's wrongful death statute, MO. REV. STAT. § 537.080, alleging claims of strict product liability, failure to warn, and negligence. (Doc. 1). Defendant JLG Industries, Inc. ("JLG"), moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 40). The court will grant JLG's motion.

# I.    Factual Background & Procedural History[1]

The material facts of this case are undisputed. (See Doc. 45 at 1). Randall Grant ("Grant"), late husband of plaintiff Renee Teresa Goellner-Grant and father of plaintiffs Kyle D. Grant and Alexander Goellner, was killed in a tragic boom lift accident on April 30, 2015. (Doc. 41 ¶¶ 1, 3). When the accident occurred, Grant was using a JLG-manufactured 2002 E450AJ boom lift to replace light bulbs in a parking garage in St. Louis County, Missouri. (Id. ¶ 3). Grant, in the course of his work, became pinned between a ceiling cross bar and the lift's control panel and sustained fatal injuries. (Id.)

On February 28, 2018, the Goellner-Grant family filed their first lawsuit ("Missouri suit") against JLG in the United States District Court for the Eastern District of Missouri. (Id. ¶ 5). The district court dismissed the Missouri suit for lack of personal jurisdiction. (Id. ¶ 8). On October 26, 2018, the Goellner-Grant family filed a second complaint ("Kansas suit") in the United States District Court for the District of Kansas, alleging claims of strict product liability, failure to warn, and negligence under Missouri's wrongful death statute, Mo. Rev. Stat. § 537.080. (Doc. 1; Doc. 41 ¶ 9). In its answer, JLG moved to dismiss, challenging personal

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." Local Rule of Court 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 41, 45). Because the Goellner-Grant family does not dispute JLG's statement of material facts, (see Doc. 45 at 1), the court cites directly to JLG's statement.

jurisdiction and venue.  (Doc. 41 ¶ 10).  The court found that venue was improper in

Kansas but declined to dismiss the case.  (Id. ¶ 11; Doc. 26).  Instead, the court

transferred the case to this court under to 28 U.S.C. § 1406(a).  (Doc. 26 at 1, 3).

After the case was transferred, JLG moved for summary judgment pursuant to

Federal Rule of Civil Procedure 56.  The motion is fully briefed and ripe for

disposition.

## II.    Legal Standard

The court exercises diversity jurisdiction over the instant matter because the

parties are completely diverse of citizenship and the amount in controversy exceeds

$75,000.  (Doc. 1 ¶ 9; Doc. 9 ¶ 9); see 28 U.S.C. § 1332(a).

Through summary adjudication, the court may dispose of those claims that

do not present a "genuine dispute as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of

proof tasks the non-moving party to come forth with "affirmative evidence, beyond

the allegations of the pleadings," in support of its right to relief.  Pappas v. City of

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most

favorable to the non-moving party and draw all reasonable inferences in that party's

favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-

57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89

(1986).  Only if this threshold is met may the cause of action proceed.  <u>See</u> <u>Pappas</u>,

331 F. Supp. 2d at 315.

**III.  <u>Discussion</u>**

The sole question before this court is whether the Goellner-Grant family's

claims are time-barred.  JLG argues that Pennsylvania's limitations period for

wrongful death cases applies and bars the claims.  (<u>See</u> Doc. 42 at 1).  The Goellner-

Grant family contends that Section 1406(a) saves their claims from dismissal and

that Kansas and Missouri choice-of-law rules and limitations periods apply.  (Doc.

45 at 2–3, 5–6).  Embedded within the court's summary judgment analysis are three

interrelated considerations: (1) how Section 1406(a) impacts statutes-of-limitations

questions; (2) which state's statute of limitations governs this case; and (3) whether

the applicable limitations period bars the Goellner-Grant family's claims.  The court

will address each consideration *seriatim*.

**A.  Statutes-of-Limitations Questions in Section 1406(a) Transfers**

A federal court hearing a diversity case applies state substantive law to the

claim before it, including state statutes of limitations.  <u>Guar. Tr. Co. of N.Y. v. York</u>,

326 U.S. 99, 110–12 (1945) (applying <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 79–80

(1938)).  In statute-of-limitations disputes, federal courts consult the forum state's

choice-of-law rules to determine the correct limitations period.  <u>Klaxon Co. v.</u>

<u>Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Ross v. Johns-Manville Corp.</u>, 766

F.2d 823, 826 (3d Cir. 1985).  When a case is transferred from one district court to

another, these general principles must be considered in light of the rules and

policies of the relevant federal transfer statute.

Federal law provides two avenues by which a district court may effectuate a venue transfer. First, 28 U.S.C. § 1404(a) grants district courts discretion to transfer a correctly filed case to any other district where the case may have been brought for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a). It is well settled that a court receiving a Section 1404(a) transfer must apply the law of the transferor state. Ferens v. John Deere Co., 494 U.S. 516, 518–19 (1990); Van Dusen v. Barrack, 376 U.S. 612, 636, 639 (1964); Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 170–71 (3d Cir. 2011). This treatment ensures that transfers made in the name of convenience do not compromise any state-law advantages a plaintiff may have had in the technically correct, albeit inopportune, transferor forum. See Ferens, 494 U.S. at 523; Van Dusen, 376 U.S. at 633–34.

Second, 28 U.S.C. § 1406(a) allows a district court to transfer a case filed in an improper venue when it is in the "interest of justice." 28 U.S.C. § 1406(a). Our sister circuit courts have recognized a distinction between Section 1406(a)'s defect-curing nature and Section 1404(a)'s eye toward convenience; the resultant approach is that the transferee forum's substantive laws, including statutes-of-limitations and choice-of-law rules, apply in Section 1406(a) transfers.[2] Courts reason that this

---

[2] See e.g., Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 588–89 (8th Cir. 2007); Flynn v. Greg Anthony Constr. Co., 95 F. App'x 726, 739 (6th Cir. 2003) (nonprecedential); Jackson v. W. Telemarketing Corp. Outbound, 245 F.3d 518, 523 (5th Cir. 2001); Schaeffer v. Village of Ossining, 58 F.3d 48, 50 (2d Cir. 1995); Myelle v. Am. Cyanamid Co., 57 F.3d 411, 413 (4th Cir. 1995); Manley v. Engram, 755 F.2d 1463, 1467 (11th Cir. 1985); Nelson v. Int'l Paint Co., 716 F.2d 640, 643–44 (9th Cir. 1983); Geehan v. Monahan, 382 F.2d 111, 114 (7th Cir. 1967); see also Ross v. Colo. Outward Bound Sch., Inc., 822 F.2d 1524, 1527 (10th Cir. 1987) (distinguishing venue transfers made pursuant to 1406(a) from jurisdiction transfers made pursuant to 28 U.S.C. § 1631).

approach protects defendants from the potentially detrimental impacts of an improperly chosen forum and deters plaintiffs from filing in a jurisdictionally deficient, yet substantively favorable, venue. McGarrey v. Marquart, No. 2:07-CV-1556, 2010 WL 235115, at *5 (W.D. Pa. Jan. 12, 2010) (citing Eggleton, 495 F.3d at 588). The Third Circuit has not directly addressed the issue: in its most recent decision involving a Section 1406(a) transfer, the limitations periods in both the transferor and transferee forums were the same. Lafferty v. St. Riel, 495 F.3d 72, 81 (3d Cir. 2007). The court signaled agreement with the settled rule among the circuits—noting that the "sounder interpretation" is that "the transferee forum's limitation statute applies"—but expressly declined to decide what law applies when the limitations periods are different. Id. at 76 n.6, 81.

This rule squares with the policy undergirding Section 1406(a). Congress enacted this transfer provision in light of the reality that venue often turns on "elusive facts" which may evade plaintiffs in search of the proper forum. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466–67 (1962). Section 1406(a) seeks to prevent the "'time-consuming and justice-defeating technicalities'" associated with dismissing a case and requiring a petitioner to start from scratch in another court. Id. at 467 (internal citation omitted). Therefore, courts adopt the date a plaintiff filed in the defective forum as the filing date in the proper venue, tolling "whatever statutes of limitation would otherwise apply." Id.; Lafferty, 495 F.3d at 82–83. A careful reading of Section 1406(a) jurisprudence suggests its remedy is limited to addressing the procedural pitfalls it seeks to guards against—the transfer provision was not intended to allow a plaintiff to reap the substantive benefits of laws,

including statutes of limitations, from a state in which the claim never should have been brought.  See Van Dusen, 376 U.S. at 634; Eggleton, 495 F.3d at 588–89; Lafferty, 495 F.3d at 81.

The Goellner-Grant family originally filed this action in the District of Kansas.  (Doc. 1).  Finding venue improper, the Kansas court employed Section 1406(a) to transfer the case to this court.  (Doc. 26 at 3).  We join the unanimous accord among our sister circuits and conclude that the laws of the transferee forum—Pennsylvania—govern the Goellner-Grant family's claims.  Mindful of Section 1406(a)'s purpose, the date the Goellner-Grant family filed this action in Kansas, October 26, 2018, becomes the filing date in this court.  We must thus look to Pennsylvania's choice-of-law rules to determine the applicable statute of limitations and whether the October 26, 2018 complaint is timely.

### B.    Application of Pennsylvania's Choice-of-Law Rules for Statute-of-Limitations Questions

"Pennsylvania courts ordinarily apply the Pennsylvania statute of limitations."  Ross, 766 F.2d at 826 (citing Freeman v. Lawton, 46 A.2d 205, 207 (Pa. 1946)).  For a claim that accrued in a foreign jurisdiction, however, Pennsylvania courts turn to the state's "borrowing statute" to resolve statute-of-limitations disputes.  See Stephens v. Clash, 796 F.3d 281, 289 (3d Cir. 2015).  The borrowing statute directs that the "period of limitation applicable to a claim accruing outside [Pennsylvania] shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of [Pennsylvania], *whichever bars the claim first*."  42 PA. CONS. STAT. § 5521(b)

(emphasis added).  Courts applying the borrowing statute have abided by the statute's sometimes harsh result of barring claims that may have been timely under the accrual state's longer limitations period.  See Hartz v. Diocese of Greensburg, 94 F. App'x 52, 55 (3d Cir. 2004) (nonprecedential); see also Yoder v. Frontier Nursing Univ., Inc., 351 F. Supp. 3d 934, 940 (W.D. Pa. 2018).  As the Third Circuit explained, Pennsylvania's borrowing statute "was not designed to benefit plaintiffs by allowing them to take advantage of a longer foreign limitations period when bringing their claims in another forum."  Ross, 766 F.2d at 827.

The parties agree that the cause of action in the instant matter accrued in Missouri.  Thus, Pennsylvania's borrowing statute is implicated and calls for examination of both Missouri's and Pennsylvania's wrongful-death limitations periods.  Missouri's limitations period is three years from the date the claim accrued, MO. REV. STAT. § 537.100; Pennsylvania's limitations period is two years from the date the claim accrued, 42 PA. CONS. STAT. § 5524(2).  Under the borrowing statute, Pennsylvania's two-year statute of limitations—the shorter of the two periods—governs the Goellner-Grant family's claims.

### C.      Application of Pennsylvania's Two-Year Statute of Limitations to the Goellner-Grant Family's Claims

JLG and the Goellner-Grant family agree that the cause of action accrued on April 30, 2015.  (Doc. 41 ¶ 4).  To fall within Pennsylvania's two-year limitations period, the Goellner-Grant family must have filed their lawsuit by April 30, 2017.  We treat the Goellner-Grant family's case as if it was filed with this court on

October 26, 2018.  Hence, Pennsylvania's two-year wrongful death limitations period bars their claims.

The Goellner-Grant family rejoins that applying Pennsylvania's limitations period penalizes them, in contravention of Section 1406(a), for mistakenly filing in the incorrect venue.  (See Doc. 45 at 4–5).  Positing that the transferor's choice-of-law provisions would save their claims, the Goellner-Grant family points to a Kansas rule that treats limitations periods set forth in foreign statutes, like Missouri's wrongful death statute, as controlling.  (Id. at 4 (citing Garcia v. Int'l Elevator Co., 358 F.3d 777, 779–80 (10th Cir. 2004))).  Missouri's wrongful death statute, in turn, incorporates a three-year limitations period.  MO. REV. STAT. §§ 537.080, 537.100.  Missouri also has a "saving statute" that effectively extends the applicable statute-of-limitations by a year when a plaintiff files a "nonsuit" and then, within a year, commences a new action.  Id. § 516.230.  The Goellner-Grant family filed in Kansas approximately six months after the Missouri limitations period expired.  Thus, their timeliness theory hinges not only on the applicability of the transferor's substantive law, but also on the relevance of Missouri's "saving statute."  (See Doc. 45 at 3–4).

This line of reasoning is both attenuated and misdirected.  First, it is unlikely that Missouri's "saving statute" applies.  The Goellner-Grant family offers no support for the argument that their original claim, brought in the Eastern District of Missouri and dismissed for lack of personal jurisdiction, qualifies as a nonsuit.  JLG

answers with case law indicating that a case dismissed for lack of jurisdiction is not a nonsuit, but is the legal equivalent of the suit having never been filed. (Doc. 46 at 5 n.1 (citing Cross v. Gen. Motors Corp., 778 F.2d 468, 470 (8th Cir. 1985), cert. denied 476 U.S. 1170 (1986))). Second, as set forth above, the substantive laws of the transferee state, including statutes-of-limitations and choice-of-law rules, govern in Section 1406(a) transfers. Although we are not unsympathetic to the Goellner-Grant family's circumstances, the injustice that the Goellner-Grant family perceives from application of Pennsylvania law simply is not the type of injustice Section 1406(a) was enacted to avoid. The Goellner-Grant family's argument that this court should apply Kansas and, by incorporation, Missouri law is therefore unavailing.

IV.    **Conclusion**

The court will grant JLG's motion (Doc. 40) for summary judgment. An appropriate order shall issue.


                                        /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania


Dated:    November 5, 2019